GIBSON, DUNN & CRUTCHER LLP
ORIN SNYDER (*Pro Hac Vice* Application Pending)
osnyder@gibsondunn.com
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

THEANE EVANGELIS KAPUR, SBN 243570
tkapur@gibsondunn.com
KATIE TOWNSEND, SBN 254321
ktownsend@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Defendant,
Starbucks Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **CARLY E. SIMON**,<br><br>Plaintiff,<br><br>v.<br><br>**STARBUCKS CORPORATION**,<br><br>Defendant. | CASE NO. CV09-09074 GW (PLAx)<br><br>**DEFENDANT STARBUCKS CORPORATION'S REQUEST FOR JUDICIAL NOTICE**<br><br>[Motion to Stay Pending Decision by the United States Supreme Court on Controlling Issue of Law Filed Concurrently]<br><br>Date:     January 7, 2010<br>Time:    8:30 a.m.<br>Place:   Courtroom 10<br>Judge:  Hon. George H. Wu |

Defendant Starbucks Corporation ("Starbucks") respectfully requests that this Court take judicial notice of the following documents attached hereto:

## I.  DOCUMENTS OF WHICH JUDICIAL NOTICE IS REQUESTED

<u>Exhibit A</u>:  A true and correct copy of the Northern District of California's decision in *Beck v. Starbucks Corporation*, C-08-2930 MMC, 2008 U.S. Dist. LEXIS 111053 (N.D. Cal. Sept. 19, 2008).

<u>Exhibit B</u>:  A true and correct copy of the June 12, 2007 "Order Remanding Civil Action to Superior Court" entered by the United States District Court for the Central District of California in *Mbalati v. Starbucks Corporation*, CV 07-3267 RGK (FFMx).

<u>Exhibit C</u>:  A true and correct copy of excerpts of the November 10, 2009 oral argument before the United States Supreme Court in *Hertz Corporation v. Friend*, 08-1107.

<u>Exhibit D</u>:  A true and correct copy of a November 11, 2009 news article, published on Law.com, by Tony Mauro entitled "Justices Sympathetic to Applying Headquarters Standard to Corporate Jurisdiction."

## II.  ARGUMENT

Defendant Starbucks requests that the Court take judicial notice of the documents listed above under Rule 201 of the Federal Rules of Evidence, which provides that "[a] court may take judicial notice" of facts "not subject to reasonable dispute," and "shall take judicial notice if requested by a party and supplied with the necessary information."

A fact can be judicially noticed if it is "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201.  Exhibits A, B, and C are records of judicial proceedings and matters of public record.  Those exhibits consist of, specifically (1) a June 12, 2007 remand order entered by the United States District Court for the Central District of California in *Mbalati v. Starbucks Corporation*, CV 07-3267 RGK (FFMx),

("*Mbalati*"), (2) a September 19, 2008 decision, entered by the Northern District of California in *Beck v. Starbucks Corporation*, C-08-2930 MMC, ("*Beck*"), and (3) the transcript of the November 10, 2009 oral argument before the United States Supreme Court in *Hertz Corporation v. Friend*, 08-1107 ("*Hertz*").  Under Rule 201 of the Federal Rules of Evidence, "[m]aterials from a proceeding in another tribunal are appropriate for judicial notice."  *Biggs v. Terhune*, 334 F.3d 910, 916 (9th Cir. 2003).  These materials are directly relevant to Starbucks' concurrently filed Motion to Stay Pending Decision by the United States Supreme Court on Controlling Issue of Law ("Motion").  By its Motion, Starbucks seeks a temporary stay of proceedings pending a decision by the United States Supreme Court in *Hertz*, which is expected to provide guidance as to the appropriate test for determining Starbucks' citizenship for purposes of federal diversity jurisdiction, a significant threshold issue in this case.   As explained in more detail in Starbucks' Motion, the proceedings in *Beck* and *Mbalati* illustrate the conflicting conclusions that California district courts have reached regarding Starbucks' diversity, and thus the need for a stay pending clear guidance from the United States Supreme Court in *Hertz*.  Exhibit C is further evidence of the expected impact that the Court's forthcoming decision in *Hertz* will have on this Court's exercise of jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1441.

Exhibit D is a news account of the November 10, 2009 oral argument before the United States Supreme Court in *Hertz*.  This article is the appropriate subject of judicial notice, as "[t]his court may take judicial notice of adjudicative facts appearing in newspapers."  *Crowder v. Kitagawa*, 81 F.3d 1480, 1492 (9th Cir. 1996).  This news account is relevant to Starbucks' Motion as it, like Exhibit C, illustrates the significant impact that the *Hertz* decision likely will have on this action, and thus the propriety of a stay pending that decision.

### III.  CONCLUSION

Neither party can reasonably dispute the authenticity of these exhibits, which are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *See* Fed. R. Evid. 201.  Due to their relevance to Starbucks' concurrently filed Motion, Defendant Starbucks respectfully requests that this Court take judicial notice of the documents attached as Exhibits A through D.

DATED:  December 14, 2009

                                      Theane Evangelis Kapur
                                      GIBSON, DUNN & CRUTCHER LLP

By: _____

                                      Theane Evangelis Kapur
                                      Attorneys for Defendant Starbucks Corporation

# EXHIBIT A



FOCUS - 2 of 2 DOCUMENTS

**WHITNEY BECK, Plaintiffs, v. STARBUCKS CORPORATION, et al., Defendants**

No. C-08-2930 MMC

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*2008 U.S. Dist. LEXIS 111053*

**September 19, 2008, Decided
September 19, 2008, Filed**

**COUNSEL:** [*1] For Whitney Beck, Plaintiff: E. Denise Schissler, Robert Charles Hubbs, LEAD ATTORNEYS, Kneisler, Schondel & Hubbs, Santa Rosa, CA; Jonmi Nai On Koo, Rao Ongaro Burtt & Tiliakos LLP, San Francisco, CA.

For Starbucks Corporation, Defendant: David Raymond Ongaro, Jonmi Nai On Koo, LEAD ATTORNEYS, Rao Ongaro Burtt & Tiliakos LLP, San Francisco, CA.

**JUDGES:** MAXINE M. CHESNEY, United States District Judge.

**OPINION BY:** MAXINE M. CHESNEY

**OPINION**

**ORDER REMANDING ACTION**

Before the Court is defendant Starbuck Corporation's ("Starbucks") Notice of Removal, filed June 12, 2008, [1] by which Starbucks removed from state court plaintiff Whitney Beck's complaint on the asserted ground of diversity of citizenship.

> 1   The matter was reassigned to the undersigned on September 12, 2008.

In its Notice, Starbucks alleges sufficient facts to support a finding that Starbucks is a citizen of Washington, that plaintiff is a citizen of California, and that plaintiff is seeking damages in excess of $ 75,000. Although Starbucks acknowledges that a second defendant, Christina Carroll ("Carroll"), is a California citizen, Starbucks asserts that Carroll's citizenship can be disregarded, for the reason she is a "sham" defendant, (*see* Notice of Removal [*2] P 9), i.e., she was fraudulently joined as a defendant.

"Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of diversity, [i]f the plaintiff fails to state a cause of action against [the non-diverse] defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc., 236 F. 3d 1061, 1067 (9th Cir. 2001)* (internal quotation and citation omitted).

The sole claim alleged by plaintiff against Carroll, who is alleged to be a "store manager" of a Starbucks located in Santa Rosa, California, (*see* Compl. PP 4-5), is a claim of retaliation under *§ 12940(h) of the California Government Code*. According to Starbucks, plaintiff's joinder of Carroll is fraudulent in light of *Jones v. Lodge at Torrey Pines Partnership, 42 Cal. 4th 1158, 72 Cal. Rptr. 3d 624, 177 P.3d 232 (2008)*. In *Jones*, an opinion issued several months after plaintiff filed her complaint in state court, the California Supreme Court, in a 4-3 decision, held that "nonemployer individuals" may not be held liable for retaliation under *§ 12940(h)*. See id. at *1173*.

Where a defendant removes an action on the basis of

diversity jurisdiction, a district [*3] court has "subject matter jurisdiction" over the matter only if diversity exists "both when the state [complaint] is filed and when the petition for removal is filed." *See Ryan v. Schneider Nat'l Carriers, 263 F. 3d 816, 819 (8th Cir. 2001)*; *see also Koenigsberger v. Richmond Silver Mining Co., 158 U.S. 41, 49-50, 15 S. Ct. 751, 39 L. Ed. 889 (1895)* (holding where federal court "takes jurisdiction of a suit already pending [in state court] the requisite citizenship must have existed at the time of its commencement"; referring to such requirement as one of "jurisdiction"). An exception to this rule exists where, although diversity did not exist when the complaint was filed, the plaintiff, by amending the complaint or otherwise, voluntarily dismisses the non-diverse party or parties. *See Self v. General Motors Corp., 588 F. 2d 655, 659 (9th Cir. 1978)*. As the Ninth Circuit has explained, under the "'voluntary-involuntary' rule," a complaint not removable when filed must "remain in state court unless a 'voluntary' act of the plaintiff brings about a change that renders the case removable." *See id. at 657*. Thus, where a state court dismisses a non-diverse defendant "without [the plaintiff's] assent," the complaint [*4] is not removable on diversity grounds. *See id. at 658*; *see, e.g., Whitcomb v. Smithson, 175 U.S. 635, 637-38, 20 S. Ct. 248, 44 L. Ed. 303 (1900)* (holding where state court directed verdict in favor of non-diverse defendant, remaining diverse defendant could not thereafter remove case on ground of diversity jurisdiction).

Here, at the time the complaint was filed in December 2007, there was no settled California rule precluding a finding of personal liability against an individual for retaliation under *§ 12940(h)*. Indeed, a number of California courts had expressly held that such a claim was viable. *See Jones, 42 Cal. 4th at 1162* (citing, in opinion dated March 3, 2008, prior California Court of Appeal opinions so holding). Under such circumstances, it cannot be said that, at the time the initial complaint was filed in state court, plaintiff's naming Carroll as a defendant constituted a fraudulent joinder. Consequently, the parties were not diverse at the time the initial complaint was filed, because both plaintiff and Carroll are citizens of California. Further, Starbucks cannot establish that diversity was subsequently accomplished as a result of a voluntary act on the part of plaintiff; rather, under Starbucks' [*5] theory, the parties became diverse as a result of the California Supreme Court's decision in *Jones*, which decision cannot in any respect be considered a voluntary act on the part of plaintiff.[2]

> 2 After *Jones* was issued, counsel for Starbucks inquired of plaintiff if she would dismiss Carroll to avoid Carroll's having to file a demurrer in light of *Jones*, and plaintiff responded she was willing to dismiss Carroll and requested Starbucks prepare a stipulation of dismissal for plaintiff's review. (*See* Notice of Removal Ex. C.) The record does not disclose whether Starbucks prepared such proposed stipulation, but, in any event, plaintiff did not subsequently dismiss Carroll.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *See 28 U.S.C. § 1447(c)*. Here, for the reasons discussed above, the parties were not diverse at the time the complaint was filed, and the parties did not subsequently become diverse as a result of a voluntary act on the part of plaintiff. Consequently, the Court lacks diversity jurisdiction over the instant action. *See Koenigsberger, 158 U.S. at 49-50*; 95); *Ryan, 263 F. 3d at 819*.

Accordingly, [*6] the instant action is hereby REMANDED, for lack of subject matter jurisdiction, to the Superior Court of California, in and for the County of Sonoma.

**IT IS SO ORDERED**.

Dated: September 19, 2008

/s/ Maxine M. Chesney

MAXINE M. CHESNEY

United States District Judge

**EXHIBIT B**

Priority ✓
Send ✓
Enter ✓
Closed ___
JS-5/JS-6 ✓
JS-2/JS-3 ___
Scan Only ___

ENTERED
CLERK, U.S. DISTRICT COURT
JUN 12 2007
CENTRAL DISTRICT OF CALIFORNIA
BY BG DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
JUN 11 2007
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY
SCANNED

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABRAHAM MBALATI,<br><br>Plaintiff,<br><br>vs.<br><br>STARBUCKS CORPORATION, a Washington Corporation, and DOES 1 through 50, inclusive,<br>Defendants. | CASE NO. CV 07-3267 RGK (FFMx)<br><br>BC 360330<br><br>**ORDER REMANDING CIVIL ACTION TO SUPERIOR COURT** |

On May 17, 2007, Defendants Starbucks Corporation ("Defendant") removed this action from Superior Court for the State of California, County of Los Angeles, to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1332(d). On May 22, 2007, the Court issued an Order to Show Cause Re Remand to State Court ("OSC"), which required Defendant to submit evidence establishing that this Court has jurisdiction over the matter. Defendant timely responded to the Court's Order.

For the following reasons, this Court finds that it does not have jurisdiction over this matter.

7

In its OSC, the Court requested information regarding three main categories of business: number of employees, gross revenue, and tangible property. In all categories but one, California ranks highest in percentage. As to number of employees, California employs 27% of the total U.S. workforce, over 100% more than Washington, the next highest state, which has 10%. As to gross revenue, California generates 25% of the total gross revenue, more than 300% more than the next highest states, Texas and New York, which each generate 6%. As to tangible property, Defendant operates 27% of its retail stores in California, more than 200% more than Texas, which has 7% of Defendant's retail stores. As to non-retail space, Washington ranks highest, with 52%. California's non-retail space, at 3%, does not rank among the top three states. Based on these statistics, the Court finds that the overall predominance of business activity occurs in California. As a result, diversity jurisdiction does not exist.

In light of the foregoing, the above-entitled case is ordered **remanded** to Superior Court for all further proceedings for lack of subject matter jurisdiction.

DATED: JUN 11 2007

R. GARY KLAUSNER
UNITED STATES DISTRICT JUDGE

# EXHIBIT C

Official - Subject to Final Review

```
 1      IN THE SUPREME COURT OF THE UNITED STATES
 2   - - - - - - - - - - - - - - - - - x
 3   THE HERTZ CORPORATION,            :
 4            Petitioner               :
 5       v.                            :  No. 08-1107
 6   MELINDA FRIEND, ET AL.            :
 7   - - - - - - - - - - - - - - - - - x
 8                           Washington, D.C.
 9                           Tuesday, November 10, 2009
10
11            The above-entitled matter came on for oral
12   argument before the Supreme Court of the United States
13   at 11:07 a.m.
14   APPEARANCES:
15   SRI SRINIVASAN, ESQ., Washington, D.C.; on behalf of
16      the Petitioner.
17   TODD M. SCHNEIDER, ESQ., San Francisco, Cal.; on behalf
18      of the Respondents.
19
20
21
22
23
24
25
```

1

1    corporations are local corporations, so we are really

2    just talking about --

3                JUSTICE STEVENS:  -- of an interstate

4    business who are commonly defendants in a lot of

5    lawsuits -- in a personal injury suit, and the question

6    is, can I easily decide what the place of incorporation

7    of that defendant is.

8                MR. SCHNEIDER:  That's correct, Justice

9    Stevens.  And because most of those entities are public

10   corporations, there is a lot of information available in

11   FCC filings, et cetera, as to where they are actually

12   doing business.  You can also simply look out your door

13   and figure out whether have I seen a lot of Hertz

14   outlets where I am.

15               CHIEF JUSTICE ROBERTS:  Where is -- under

16   the Ninth Circuit test, where is -- what is the

17   principal place of business of Starbucks?

18               MR. SCHNEIDER:  Under the Ninth Circuit

19   test, the principal place of Starbucks, there is a case

20   that says Starbucks is in California.  Let me give you,

21   Mr. Chief Justice --

22               JUSTICE SCALIA:  That's a surprise.

23               (Laughter.)

24               MR. SCHNEIDER:  I was -- I was surprised as

25   well.  But -- but let me give you the numbers so that it

1  makes sense, because I have read the case.

2            JUSTICE GINSBURG:  Where is -- where is its
3  headquarters.

4            MR. SCHNEIDER:  Headquarters is in Seattle,
5  Washington.  But over -- that's correct, Your Honor.

6            JUSTICE SOTOMAYOR:  That's the very first
7  little shop was there.

8            MR. SCHNEIDER:  That's my understanding,
9  yes.  However, over 100 percent more workers from
10 Starbucks are in California than Washington.

11           JUSTICE SOTOMAYOR:  Can you tell me what
12 100 percent means?  Are the number of workers in Seattle
13 inconsequential?  Is there one worker there or are we
14 talking about 1,000 in --

15           MR. SCHNEIDER:  I don't know the total
16 numbers of the workers.

17           JUSTICE SOTOMAYOR:  Isn't that important?
18 As Justice Scalia said that per capita California is
19 going to dwarf anybody anywhere if you are going to have
20 a multi-location place of business.  So don't you have
21 to know the raw numbers?

22           MR. SCHNEIDER:  I -- I don't know the raw
23 numbers from Starbucks, I'm sorry.  I just read the
24 opinion.  And what the opinion tells us is that
25 Starbucks has 10 percent of its employees in Washington

Official - Subject to Final Review

1    and 27 percent in California.  Over 300 percent more of

2    its gross revenue comes from California than any other

3    State, 200 percent more of its retail stores are in

4    California than in any other State.

5              CHIEF JUSTICE ROBERTS:  What about, I guess,

6    mail order houses?  I mean, what's the principal place

7    of business of Eddie Bauer?

8              MR. SCHNEIDER:  It would -- it would be,

9    Your Honor, wherever there is a substantial predominance

10   of its people and property.  I would assume -- and I

11   don't know the facts of Eddie Bauer, but I would assume

12   Eddie Bauer has a central location from which it does

13   its sales, which it does its factory work, where it is

14   shipping things from.

15             CHIEF JUSTICE ROBERTS:  Would -- would it

16   make a difference if, say -- it may well be the case, 30

17   percent of their business is in California?

18             MR. SCHNEIDER:  No.  But by business you

19   mean revenue, Your Honor?

20             CHIEF JUSTICE ROBERTS:  Yes.

21             MR. SCHNEIDER:  The test we posit, Your

22   Honor, focuses on people and property.  The test would

23   look first to the location of employees, tangible

24   properties and production activities, and then second to

25   income earned, purchases made and where sales take

1  place.

2             Mr. Chief Justice, did the Court have

3  interest in the jurisdictional argument?

4             CHIEF JUSTICE ROBERTS:  I don't know.

5             (Laughter.)

6             CHIEF JUSTICE ROBERTS:  I can only speak for

7  one member of the Court, and that one doesn't.

8             MR. SCHNEIDER:  Okay.  Then if the Court has

9  any questions about the -- our jurisdictional argument,

10  I would be happy to answer them.  And without further

11  questions --

12             CHIEF JUSTICE ROBERTS:  Thank you, counsel.

13             Mr. Srinivasan, you have four minutes

14  remaining.

15           REBUTTAL ARGUMENT OF MR. SRI SRINIVASAN

16                 ON BEHALF OF THE PETITIONER

17             MR. SRINIVASAN:  Your Honor, just one point

18  and I will be brief.

19             The idea that corporations would switch

20  their -- location of their headquarters in order to

21  achieve jurisdictional results hasn't been borne out in

22  any example in which I'm aware.  And there is a

23  fundamental reason why.

24             When a corporation decides to relocate its

25  headquarters, it's making a very important business

1  decision about what is the location from which its

2  direction and control is going to emanate.  That is not

3  a gamesmanship decision.  That's a bona fide decision

4  about where its headquarters are going to be located and

5  where its most important decision -- business decisions

6  are going to be made.

7           If the Court has no further questions --

8           JUSTICE SCALIA:  That means that its

9  principal officers and their families have to move.

10          MR. SRINIVASAN:  It does.

11          JUSTICE SCALIA:  That's the biggest

12  disincentive it seems to me.

13          MR. SRINIVASAN:  Absolutely, Justice Scalia.

14          If the Court has no further questions.

15          CHIEF JUSTICE ROBERTS:  Thank you, counsel.

16          The case is submitted.

17          (Whereupon, at 11:56 a.m., the case in the

18  above-entitled matter was submitted.)

19

20

21

22

23

24

25

**EXHIBIT D**




Select '**Print**' in your browser menu to print this document.

Copyright 2009. ALM Media Properties, LLC. All rights reserved.

Page printed from: http://www.law.com

Back to Article

**Justices Sympathetic to Applying Headquarters Standard to Corporate Jurisdiction**

Tony Mauro

11-11-2009



For a corporation, the U.S. Supreme Court's axiom may soon be: Home is where the headquarters is.

The Court heard oral arguments Tuesday in *Hertz Corp. v. Friend*, which raises a seemingly simple but vexing question crucial for corporations: For purposes of diversity jurisdiction, where is a company's principal place of business?

The answer will be crucial in determining whether a corporation can be sued in federal court, as it might prefer, or in plaintiff-friendly state courts. Acting in a class action by Hertz employees over wages and hours filed in California, the 9th U.S. Circuit Court of Appeals determined that, even though its headquarters is in New Jersey, Hertz is a citizen of California because more business activities occur there than in any other state. With both sides deemed to be from California, there was no federal diversity jurisdiction, so the case went to state court. Hertz appealed to the high court.

Hertz's lawyer, Sri Srinivasan of O'Melveny & Myers' Washington office, argued for a simpler test, namely where a company's headquarters is, or "the site from which a corporation directs and controls all the company's operations throughout all of its locations." That is a "relatively straightforward" determination that the public can easily ascertain, Srinivasan said, and it also preserves diversity jurisdiction in all but a company's headquarters state.

Srinivasan cited the example of Wal-Mart Stores Inc., which is "universally recognized to be an Arkansas corporation." But under the 9th Circuit's standard, it might be viewed as a Texas company, because it has more stores and employees there than any other state.

Justices seemed sympathetic, with Justice Anthony Kennedy stating that "not all diversity suits have major law firms in them" that would be able to make the calculations necessary to locate a company's citizenship under the "complex tests" of the 9th and other circuits.

15

Todd Schneider of San Francisco's Schneider Wallace Cottrell Brayton Konecky, who argued for the Hertz workers, defended the 9th Circuit test as a fairer assessment of where a company's "people and property are."

But Justice Ruth Bader Ginsburg objected that, under that standard, "California is going to be the big winner in this. It's going to be able to keep all those cases in its state court because so many multistate corporations, I would imagine, would come out, just the way Hertz does."

Schneider's argument was not helped when Chief Justice John Roberts Jr. asked him where the principal place of business for Starbucks would be under the 9th Circuit test.

Schneider confessed that a court had already answered that question as California, because Starbucks Corp. has more than 100 percent more employees in California than in Washington state, where its headquarters is.

"That's a surprise," Justice Antonin Scalia said sarcastically.

Though most of the Court appeared to embrace some version of a headquarters standard, some justices appeared concerned about the possibility that it might result in abuse by corporations seeking to avoid state courts.

"There has to be something more to the test," said Justice Sonia Sotomayor. "There has to be some form of activity in that place." She suggested a compromise whereby a company's principal place of business would presumptively be its headquarters or "nerve center," but the opposing party would be able to challenge that designation. "You can rebut it if it is a shell headquarters."

16