GIBSON, DUNN & CRUTCHER LLP
ORIN SNYDER (*Pro Hac Vice* Application Pending)
osnyder@gibsondunn.com
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

THEANE EVANGELIS KAPUR, SBN 243570
tkapur@gibsondunn.com
KATIE TOWNSEND, SBN 254321
ktownsend@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Defendant,
Starbucks Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **CARLY E. SIMON**, | CASE NO. CV09-09074 GW (PLAx) |
| Plaintiff, | **DEFENDANT STARBUCKS CORPORATION'S RETURN TO THE COURT'S JANUARY 7, 2010 ORDER TO SHOW CAUSE** |
| v. | |
| **STARBUCKS CORPORATION**, | Date:     February 8, 2010 |
| Defendant. | Time:     8:30 a.m. |
| | Place:    Courtroom 10 |
| | Judge:    Hon. George H. Wu |

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I. INTRODUCTION ........................................................................................... 1

II. DISCUSSION .................................................................................................. 1

    A. THE REQUISITE DIVERSITY EXISTS ........................................... 1

        1. THE NINTH CIRCUIT STANDARD FOR DETERMINING A CORPORATION'S CITIZENSHIP FOR PURPOSES OF FEDERAL DIVERSITY JURISDICTION ..................................... 1

    B. BECAUSE NO ONE STATE CONTAINS A "SUBSTANTIAL PREDOMINANCE" OF STARBUCKS' CORPORATE OPERATIONS THE "NERVE CENTER" TEST APPLIES ................... 4

        1. STARBUCKS' NATIONWIDE PRESENCE ............................... 4

            A. RETAIL LOCATIONS AND SOURCES OF REVENUE ............................................................................ 4

            B. STARBUCKS' EMPLOYEES ............................................. 5

            C. PROPERTY ....................................................................... 6

    C. UNDER THE "NERVE CENTER" TEST, STARBUCKS' PRINCIPAL PLACE OF BUSINESS IS IN THE STATE OF WASHINGTON ..................................................................................... 7

III. CONCLUSION ................................................................................................ 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arellano v. Home Depot U.S.A., Inc.*,
  245 F. Supp. 2d 1102 (S.D. Cal. 2003) .................................................................. 3, 5

*Breitman v. May Co. Cal.*,
  37 F.3d 562 (9th Cir. 1994) .................................................................................... 3, 7

*Davis v. HSBC Bank*,
  557 F.3d 1026 (9th Cir. 2009) .......................................................................... passim

*Ho v. Ikon Office Solutions, Inc.*,
  143 F. Supp. 2d 1163 (N.D. Cal. 2001) .................................................................. 3, 5

*Tosco Corp. v. Communities for a Better Env't*,
  236 F.3d 495 (9th Cir. 2001) ....................................................................................... 2

**Statutes**

28 U.S.C. § 1332 ................................................................................................................. 1

28 U.S.C. § 1332(a) ............................................................................................................ 1

28 U.S.C. § 1332(c) ............................................................................................................ 1

28 U.S.C. §1441 .................................................................................................................. 1

Defendant Starbucks Corporation ("Starbucks") respectfully submits this return showing cause why this case should not be remanded to state court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This action was timely and properly removed to this Court pursuant to 28 U.S.C. §§ 1332 and 1441, and it should not be remanded to the state court.  First, as is clear from the face of Plaintiff's Complaint, "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a); *see* Starbucks' Notice of Removal at 3–4.  Second, the parties are of diverse citizenship, and neither party is a citizen of the State of California.  For these reasons, the Court has subject matter jurisdiction over this action, and the Court's January 7, 2010 Order to Show Cause should be discharged.

### II. DISCUSSION

**A.  The Requisite Diversity Exists**

As stated in Starbucks' Notice of Removal, the Complaint alleges that Plaintiff, an individual, is a citizen of Massachusetts.  (Cmplt. at ¶ 2.)  Further, as set forth in more detail below, Starbucks is neither a citizen of Massachusetts, nor a citizen of California.  Thus, complete diversity exists among the parties, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1441.

**1.  The Ninth Circuit Standard for Determining a Corporation's Citizenship for Purposes of Federal Diversity Jurisdiction**

Pursuant to 28 U.S.C. § 1332(c), a corporation is a citizen of (1) the state under whose laws it is organized or incorporated;[1] and (2) the state of its "principal place of business."  At present, the Ninth Circuit applies "two tests to determine the state of a

---

[1] Starbucks is a corporation organized under the laws of the State of Washington. (Russell Decl. at ¶ 3.)

corporation or partnership's principal place of business." *Davis v. HSBC Bank*, 557 F.3d 1026, 1028–29 (9th Cir. 2009).

> First we apply the "place of operations" test. Under that test, a corporation's principal place of business is the state "containing a substantial predominance of corporate operations." If no state contains a "substantial predominance" of corporate operations, we apply the "nerve center" test, which locates the corporation's principal place of business in the state where "the majority of its executive and administrative functions are performed."

*Id.* (quoting *Tosco Corp. v. Communities. for a Better Env't*, 236 F.3d 495, 500 (9th Cir. 2001)).

The Ninth Circuit's current "place of operations" or "substantial predominance" inquiry "requires a comparison of [the] corporation's business activity in the state at issue to its business activity in other individual states," and courts "employ a number of factors to determine if a given state contains a substantial predominance of corporate activity." *Davis*, 557 F.3d at 1028. These factors include "the location of employees, tangible property, production activities, sources of income, and where sales take place." *Id.* (citing *Tosco*, 236 F.3d at 500–01).

While there is no "hard and fast rule or percentage by which the operations in one state must exceed those in other states," a finding of "substantial predominance" requires that a "corporation's activity in one state [] be 'substantially larger' than the corporation's activity in any other state." *Davis*, 557 F.3d at 1028–29 (noting that "the test requires a 'substantial' predominance, not mere predominance"). The term "substantially" is properly defined—consistent with the purposes of diversity jurisdiction[2]—with "an eye to ensuring that a corporation is a citizen of the place in which it is *least likely* to suffer prejudice." *Davis*, 557 F.3d at 1029 (emphasis added).

---

[2] In "determining whether a corporation's operations 'substantially' predominate, we must take into consideration both the nature of the corporation's business activities and the purposes of the corporate citizenship statute. The purpose of diversity jurisdiction, and the citizenship determinations associated with it, is to avoid the effects of prejudice against outsiders." *Davis*, 557 F.3d at 1029.

And, in order for a finding of "substantial" predominance to be made, it is not enough that the activities of a nationwide retailer, like Starbucks, merely reflect the populations of the states in which it operates.[3]

As the Ninth Circuit held in *Davis*, "a nationwide retailer with operations spread across many states . . . will not be a citizen of California merely because its operations in California cater to California's larger population. 557 F.3d at 1030. ("If a corporation may be deemed a citizen of California on th[at] basis, nearly every national retailer—no matter how far flung its operations—will be deemed a citizen of California for diversity purposes.")  "Because, by a considerable margin, California is the largest state, measured by population and economic activity, there often will be somewhat more activity in California than in any other individual state for truly national corporations." *Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1167–68 (N.D. Cal. 2001).  "But it is highly unlikely that Congress intended every national corporation that does more business in California than in any other single state, by virtue of that fact alone, to be deemed a citizen of California for purposes of diversity jurisdiction." *Id*.  Indeed, "[s]uch a rule would distort access to federal court in California," *id*, and would be—as the Ninth Circuit has stated—"untenable." *Davis*, 557 F.3d at 1030.

In fact, "[w]hen a corporation's activities are spread over many states," as in the case of a truly national retailer like Starbucks, "the nerve center test is usually the correct approach." *Davis*, 557 F.3d at 1029. *See also Breitman v. May Co. Cal.*, 37

---

[3] According to U.S. Census Bureau estimates, as of July 1, 2009, California, Texas, New York, Florida, and Illinois, respectively were the five most populous states. *See* U.S. Census Bureau, "Annual Estimates of the Resident Population for the United States, Regions, States, and Puerto Rico: April 1, 2000 to July 1, 2009," available at http://www.census.gov/popest/states/NST-ann-est.html.  According to this data, California's population, as of July 1, 2009, was 39,961,664—a population roughly 38% higher than that of the next most populous state, Texas (24,782,302), and more than double the populations of New York (19,541,453), and Florida (18,537,969). *Id*.  Illinois's population (12,910,409) is less than one-third the population of California. *Id*.

F.3d 562, 564 (9th Cir. 1994) ("May Company has corporate operations in over thirty states.  Because no one state contains a substantial predominance of the corporation's business activities, the place of operations test is inappropriate."); *Arellano v. Home Depot U.S.A., Inc.*, 245 F. Supp. 2d 1102, 1106 (S.D. Cal. 2003) (noting that the "nerve center" test is "generally utilized when a corporation's activities are far flung and operations are conducted in many states").

Under the "nerve center" test, "a corporation's principal place of business is the state in which the executive and administrative functions are performed." *Breitman*, 37 F.3d at 564.  *See also Arellano*, 245 F. Supp. 2d at 1108 (applying the "nerve center" test and finding that nationwide retailer Home Depot was a citizen of Georgia); *Ho*, 143 F. Supp. 2d at 1169 (applying the "nerve center" test and finding that nationwide corporation Ikon was a citizen of Pennsylvania).

**B.  Because No One State Contains A "Substantial Predominance" of Starbucks' Corporate Operations The "Nerve Center" Test Applies**

**1.  Starbucks' Nationwide Presence**

Starbucks is a truly national corporation, with retail stores in all 50 U.S. states and the District of Columbia.  Starbucks has at least 50 retail stores in 25 different states and employs more than 1,000 individuals in 29 different states.

**a.  Retail Locations and Sources of Revenue**

As of January 22, 2010, there were a total of 11,128 Starbucks-operated and licensed retail stores in the United States.  (*See* Russell Decl. at ¶ 10.)  California, Texas, and New York, respectively, have the largest number of Starbucks' retail stores.  (*See id.*)[4]  This distribution of Starbucks' stores roughly reflects the distribution of the U.S. population:  California, Texas, and New York are, respectively, the nation's most populous states.  (*See infra* n.3.)

---

[4] As of January 22, there were 2,357 Starbucks' retail stores in California, 809 in Texas, and 490 in New York.  (*See* Russell Decl. at ¶ 10.)

Similarly, in fiscal year 2009, Starbucks had approximately $7.1 billion in total U.S. net revenues. (Townsend Decl., Ex. A at 25; Russell Decl. at ¶ 12.) California, Texas, and New York, respectively, accounted for the largest percentages, per state, of that revenue. (*See* Russell Decl. at ¶ 12.)[5] Not surprisingly, these percentages are consistent with the number of retail stores in each of these states—approximately 22% of Starbucks' retail stores are in California, 8% are in Texas, and 5% are in New York. These statistics, again, simply reflect the fact that "by a considerable margin, California is the largest state, measured by population and economic activity." *Ho*, 143 F. Supp. 2d at 1167. As noted above, the mere fact that Starbucks' operations in California "cater to California's larger population" in this manner is not sufficient to make Starbucks a citizen of California. *Davis*, 557 F.3d at 1030.

### b. Starbucks' Employees

As of December 31, 2009, Starbucks employed approximately 108,768 employees in the United States. (*See* Russell Decl. at ¶11.) The majority of those individuals work in Starbucks-operated retail stores, and the remainder work in Starbucks' administrative and regional offices, store development, roasting and warehousing operations. (Townsend Decl., Ex. A at 7.) As of December 31, 2009, Starbucks' employed 28,257 individuals in California, 10,122 in Washington, and 8,194 in Texas. (*See* Russell Decl. at ¶11.)

While California has the most Starbucks' employees of any state, this is attributable to California's significantly larger population, and correspondingly higher number of Starbucks' retail locations. In fact, based on relative populations, the concentration of employees in Washington, where Starbucks' corporate headquarters is located is more than double the concentration of its employees in California.

---

[5] In fiscal year 2009, 26.63% of Starbucks' total revenue was generated in California, while 6.95% was generated in New York, and 7.18% was generated in Texas. (*See* Russell Decl. at ¶ 12.)

Starbucks employs over 0.0015% of Washingtonians, while it employs approximately 0.0007% of Californians.[6] *See Arellano*, 245 F. Supp. 2d at 1107, n.1 (conducting similar analysis). In short, Starbucks' presence in the employment market is more significant in Washington than it is in California.

### c. Property

Moreover, while Starbucks leases or owns nine properties in the United States—approximately 2 million square feet of space—in connection with its roasting and distribution operations, (Townsend Decl., Ex. A at 14), none of those properties are located in the State of California. Starbucks leases or owns three such properties, totaling approximately 866,000 square feet, in York County, Pennsylvania, and three such properties, totaling approximately 672,000 square feet, in the State of Washington. *Id*. The remaining three properties are located in Nevada, South Carolina, and Oregon. *Id*. In addition, Starbucks leases approximately 1 million square feet of office space in Seattle, Washington for corporate administrative purposes. (*Id*.)

In total, Starbucks occupies more than approximately 1,672,000 square feet of non-retail space in the State of Washington—more than in any other state. (*See id*.) In fact, when both retail and non-retail space is taken into account, Starbucks occupies approximately 2.58 million square feet in Washington as compared to approximately 2.4 million square feet of total space in California. (Russell Decl. at ¶ 13 )

---

[6] According to 2009 U.S. Census Bureau population estimates, *available at* http://www.census.gov/popest/states/NST-ann-est.html, the State of Washington has a population of 6,664,195—less than 17% of the estimated population of the State of California.

**DEFENDANT STARBUCKS CORPORATION'S RETURN TO THE COURT'S JANUARY 7, 2010 ORDER TO SHOW CAUSE**

Gibson, Dunn & Crutcher LLP

The foregoing plainly demonstrates that Starbucks' activity in one state does not "substantially predominate" when compared to its activity in other states. *Davis*, 557 F.3d at 1028–29.[7]  Accordingly, the "nerve center" test applies. *Id*.

### C. Under The "Nerve Center" Test, Starbucks' Principal Place Of Business Is In The State Of Washington

As explained above, under the "nerve center" test, "a corporation's principal place of business is the state in which the executive and administrative functions are performed." *Breitman*, 37 F.3d at 564.  Starbucks' corporate headquarters are located in Seattle, Washington, and its executive and administrative functions are performed there. (Russell Decl. at ¶3–7.)  Thus, Starbucks' principal place of business is in Washington.

### III. CONCLUSION

For the foregoing reasons, the Court has subject matter jurisdiction over this action. Starbucks thus respectfully requests that the Court's January 7, 2010 Order to Show Cause be discharged.

---

[7] This is particularly clear when the term "substantially" is properly defined to take into account the location in which a company is the "least likely to suffer prejudice." *Davis*, 557 F.3d at 1029; *see infra* n.2. In *Davis*, the Ninth Circuit held that, even though Best Buy Stores' California operations predominated over its operations in other states, they did not "substantially" predominate. In so holding, the Ninth Circuit stated that "[w]ith operations distributed widely across the country, Best Buy Stores is no more familiar to Californians than it is to Texans or Illinoisan, and hence no less likely to suffer prejudice in California than elsewhere." *Id*. at 1030.

Moreover, with respect to Starbucks, Washington would appear to be the "place in which it is least likely to suffer prejudice." *Id*. at 1029. Not only does Washington have the highest concentration of Starbucks' employees, but the company is generally associated with Seattle, Washington, the city where it was founded in 1971, where it continues to maintain its company headquarters, and where it holds its annual shareholder meetings. (*See* Starbucks' "Company Fact Sheet," *available at* http://www.starbucks.com/aboutus/Company_Factsheet.pdf; Russell Decl. at ¶¶4–7.)

7

**DEFENDANT STARBUCKS CORPORATION'S RETURN TO THE COURT'S JANUARY 7, 2010 ORDER TO SHOW CAUSE**

DATED: January 25, 2010

          Theane Evangelis Kapur
          GIBSON, DUNN & CRUTCHER LLP


          By: _____/s/_____
                Theane Evangelis Kapur
          Attorneys for Defendant Starbucks Corporation