Philip M. Bowman
BOIES, SCHILLER & FLEXNER, LLP
575 Lexington Avenue
New York, New York 10022
(212) 446-2300
pbowman@bsfllp.com
(admitted pro hac vice)

David W. Shapiro  (SBN 219265)
Jeremy M. Goldman (SBN 218888)
BOIES, SCHILLER & FLEXNER, LLP
1999 Harrison Street, Suite 1900
Oakland, CA 94612
(510) 874-1000
dshapiro@bsfllp.com, jgoldman@bsfllp.com
*Attorneys for Plaintiff  Carly E. Simon*

David Boies
BOIES, SCHILLER & FLEXNER, LLP
333 Main Street
Armonk, New York 10504
(914) 749-8200
dboies@bsfllp.com
*Of Counsel to Plaintiff Carly E. Simon*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| CARLY E. SIMON,<br><br>     Plaintiff,<br><br>     v.<br><br>STARBUCKS CORPORATION,<br><br>     Defendants. | **Case No. CV09-09074 GW (PLAx)**<br>PLAINTIFF CARLY E. SIMON'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT<br><br>(Civil Code §§ 1709, 1710, Tortious Interference with Contract, Business & Professions Code §17200 *et seq.*) |

1

2

# **TABLE OF CONTENTS**

3

I.      INTRODUCTION ……………………………………… 1

4

II.     BACKGROUND ……………………………………….. 3

5

6

III.    APPLICABLE LEGAL STANDARD  …………………… 7

7

IV.    ARGUMENT ………………………………………… 9

8

        A. The Complaint States A Claim For Deceit …………………….. 9

9

10          1.  Starbucks Had A Duty To Disclose Its
                Withdrawal From StarCon To Ms. Simon  ……………..... 9

11

12              a.  Starbucks Had The Necessary Relationship With
                    Plaintiff To Give Rise To An Affirmative Duty to

13                  Disclose ……………………………………… 10

14

15              b.  Ms. Simon Has Pleaded Two Independent Bases
                    For A Duty to Disclose …………………………… 10

16

17              c.  Ms. Simon Has Adequately Alleged That She
                    Justifiably Relied on Starbucks' Omission of

18                  Material Information ……………………………… 12

19

        B. The Complaint States A Claim For Tortious Interference

20          With Contract ……………………………………… 13

21

22      C. Ms. Simon Has Stated That Starbucks Engaged in Unlawful,
           Unfair, and Deceptive Business Acts in Violation of

23         California's Unfair Competition Law ………………………… 16

24          1.  Ms. Simon Has Standing To Bring A Claim Under
                The UCL ……………………………………… 19

25

26          2.  Starbucks' Conduct Was Unlawful  ……………………… 20

27

28          3.  Starbucks' Conduct Was Unfair …………………… 21

i

4.  Plaintiff Has Requested Proper Relief Under
      The UCL  …………………………………………… 23

D. Starbucks' Motion to Strike Portions of Plaintiff's
      Complaint Should Be Denied ……………………………….. 24

V.    CONCLUSION  …………………………………………… 25

1

# **TABLE OF AUTHORITIES**

2

## **Cases**

3

4

*Alch v. Superior Court of Los Angeles*,
    122 Cal.App.4[th] 339, 19 Cal.Rptr.3d 29 (Cal. Dist. Ct. App. 2004) . 19, 21

5

6

*Ashcroft v. Iqbal*,
    ____ U.S. ____, 129 S. Ct. 1937 (2009) .................................................. 7

7

8

*Baggett v. Hewlett-Packard Co.*,
    582 F. Supp. 2d 1261 (C.D. Cal. 2007) ................................................... 8

9

10

*Bell Atl. Corp. v. Twombley*,
    550 U.S. 544, 127 S. Ct. 1955 (2007) ..................................................... 8

11

12

*Bernardo v. Planned Parenthood Fed. of Am.*,
    115 Cal.App.4[th] 322, 9 Cal.Rptr.3d 197 (Cal. Dist. Ct. App. 2004) ....... 20

13

14

*Cairns v. Franklin Mint Co.*,
    24 F. Supp. 2d 1013 (C.D. Cal. 1998) ................................................... 25

15

16

*Cal. Housing v. Los Felix Towers Homeowners*,
    426 F. Supp. 2d 1061 (C.D. Cal. 2005) ................................................. 20

17

18

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
    590 F.3d 806 (9th Cir. 2010) ................................................................ 7

19

20

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal.4[th] 163 (Cal. 1999) ............................................................ 20, 21

21

22

*Charpentier v. Los Angeles Rams Football Co., Inc.*,
    75 Cal.App.4[th] 301, 89 Cal.Rptr.2d 115
    (Cal. Dist. Ct. App. 1999) .............................................................. 15, 16

23

24

*Claver v. Coldwell Banker Residential Brokerage Co.*,
    No. 08CV817-L (AJB), 2009 WL 801869
    (S.D. Cal., Mar. 25, 2009) ............................................................. 22, 23

25

26

27

28

iii

*Cohen v. Citizens Nat'l Trust & Savs. Bank*,
  143 Cal.App.2d 480 (Cal. Dist. Ct. App. 1956) ...................................... 11

*Colaprio v. Sun Microsystems, Inc.*,
  758 F. Supp. 1335 (N.D. Cal. 1991) ....................................................... 25

*Consumer Solutions REO, LLC v. Hillery*,
  658 F. Supp. 2d 1002 (N.D. Cal. 2009) ................................................... 24

*Falk v. General Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................................ 8, 22

*Feldberg v. Don Wilson Builders*,
  142 Cal.App.3d 383, 191 Cal.Rptr. 92 (Cal. Ct. App. 1983) ................. 11

*Hall v. Time*,
  158 Cal.App.4th 847, 70 Cal.Rptr.3d 466 (Cal. Dist. Ct. App. 2008) ...... 19

*In re Baycol Cases I and II*,
  No. B204943, 2009 WL 3353536 (Cal. Dist. Ct. App., Oct. 20, 2009) .. 24

*Katz v. Cal-Western Reconveyance Corp.*,
  No. 5:09-CV-04866 JF, 2010 WL 424453 (N.D. Cal. 2010) ................. 21

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ................................................................. 8

*Kovich v. Paseo Del Mar Homeowners Ass'n*,
  41 Cal.App.4th 863, 48 Cal.Rptr.2d (Cal. Ct. App. 1996) ..................... 11

*LiMandri v. Judkins*,
  52 Cal.App.4th 326, 60 Cal.Rptr. 25 (Cal. Dist. Ct. App. 1997) . 17, 18, 19

*Lingsch v. Savage*,
  213 Cal.App.2d 729, 29 Cal.Rptr. 201 (Cal. Dist. Ct. App. 1963) ..... 9, 10

*Motors Inc. v. Times Mirror Co.*,
  102 Cal.App.3d 735, 162 Cal.Rptr. 543 (Cal. Dist. Ct. App. 1980) ....... 21

iv

*Nathanson v. Murphy,*
    132 Cal.App.2d 363 (Cal. Dist. Ct. App. 1955) ..................................... 10

*OCM Principal Opportunities Fund v. CIBC World Mkts. Corp.,*
    157 Cal.App.4th 835, 68 Cal.Rptr.3d 828
    (Cal. App. Dist. Ct. 2007)........................................................... 13, 15, 16

*Progressive West Ins. Co. v. Yolo County Sup. Ct.,*
    135 Cal.App.4[th] 263, 37 Cal.Rptr.3d 434 (Cal. Dist. Ct. App. 2005).. .. 21

*Reeves v. Hanlon,*
    33 Cal.4[th] 1140 (2004) ................................................................. 17

*Saldate v. Wilshire Credit Corp.*
    No. CV F 09-2089, 2010 WL 624445 (E.D. Cal., Feb. 18, 2010) .......... 20

*Sebastian Int'l, Inc. v. Russolillo,*
    162 F. Supp. 2d 1198 (C.D. Cal. 2001)................................................... 17

*Shamblin v. Berge,*
    166 Cal.App.3d 118, 212 Cal.Rptr. 313 (Cal. App. 4th Dist. 1985) ........ 17

*Shapiro v. Sutherland,*
    76 Cal.Rptr.2d 101, 64 Cal.App.4[th] 1534 (Cal. Ct. App. 1999) ......... 11-12

*Smith v. State Farm Mut. Auto Ins. Co.,*
    93 Cal.App.4[th] 700, 113 Cal.Rptr.2d 399
    (Cal. Dist. Ct. App. 2001)................................................................ 21-22

*Telenda v. NM Homes One, Inc.,*
    No. B18568, 2007 WL 586804 (Cal. Ct. App., Feb. 27, 2007) ........ 12, 13

*United Farm Works of Am., AFL-CIO, et al v. Dutra Farms, et al,*
    83 Cal.App.4[th] 1146, 100 Cal.Rptr.2d 251 (Cal. Dist. Ct. App. 2000).... 19

*Walker v. Countrywide Home Loans, Inc.,*
    98 Cal.App.4[th] 1158 (2002) ................................................................. 25

*Warner Constr. Corp. v. City of Los Angeles,*
    2 Cal.3d 285 (1970)............................................................................ 12

v

*Washington v. Baenziger,*
    673 F. Supp. 1478 (N.D. Cal. 1987) ........................................................ 8

*Wells v. John Hancock Mut. Life Ins. Co.,*
    85 Cal.App.3d 66, 149 Cal.Rptr. 171 (Cal. Ct. App. 1978) ............... 10-11

*Williams v. Gerber Prod. Co.,*
    552 F.3d 934 (9th Cir. 2008) ................................................................. 22

*Witriol v. LexisNexis Group,*
    No. C05-02392, 2006 WL 4725713 (N.D. Cal., Feb. 10, 2006) ............. 19

## <u>Other Authorities</u>

Cal. Bus. and Prof. §§ 17200 – 17210 .......................................................... 19

Cal. Bus. and Prof. § 17203 ........................................................................ 23

Fed. R. Civ. P. 12(f) ..................................................................................... 25

Plaintiff Carly E. Simon ("Ms. Simon") respectfully submits this

memorandum of law in opposition to the Motion to Dismiss, or in the alternative,

to Strike Plaintiff's Complaint, of Defendant Starbucks Corporation

("Starbucks").

# I. INTRODUCTION

When Carly Simon decided to record a new album of original music – her

first in several years – she could have signed with any of a number of prominent

and well-established record labels.  Instead, she signed with the fledgling StarCon

LLC, d/b/a Hear Music.  She signed with StarCon for one reason:  StarCon was

co-owned by Starbucks (the "Star" in StarCon), which had a massive distribution

platform through its chain of retail coffee stores.  Her record license agreement

with StarCon specifically stated that Starbucks was a co-owner of StarCon.  That

was critical, because it meant that Starbucks had a financial stake in her album

and a financial interest in exploiting its own retail network to the fullest extent

possible to ensure the widest possible distribution and the greatest possible sales

for her album.

Ms. Simon produced an album and prepared for its release believing that

Starbucks would continue to be a full partner in StarCon and that her album

would be distributed through Starbucks stores.  However, five days before Ms.

Simon's album was to be released, Starbucks announced that it was withdrawing

1

from the operations of StarCon and fired StarCon's key employees.  Starbucks'

withdrawal destroyed the essential premise of Ms. Simon's relationship with

StarCon – distribution through Starbucks' retail channels – five days before her

album was released.  As a result, sales of Ms. Simon's album were,

unsurprisingly, well below what the parties anticipated.

Moreover, although Starbucks knew that Ms. Simon was relying on its

distribution platform to sell her album and had designed her promotional activity

to leverage that platform, Starbucks concealed from Ms. Simon its plans to exit

the venture, allowing her to prepare an album launch designed around Starbucks

distribution.  This denied her the ability to design an alternate promotional

strategy and caused her to waste her time, effort, and resources on ineffective

promotions tied to Starbucks.

Ms. Simon's Complaint properly alleges claims against Starbucks for

fraud, tortious interference with contract, and violations of California's Unfair

Competition Law.  Starbucks' arguments to the contrary are unavailing and its

motion to dismiss should be denied.

*First*, Starbucks argues that it had no duty to inform Ms. Simon that it

intended to terminate its involvement in StarCon – and therefore cannot be liable

for fraud – because Ms. Simon had no contract with Starbucks.  The law is clear,

however, that a duty to disclose can exist even in the absence of a contract

2

between the parties.  The Complaint alleges that Starbucks knew it would terminate its relationship with StarCon, knew that Ms. Simon was preparing for the launch of her record in reliance on Starbucks' continued participation, and yet failed to disclose its planned termination, depriving Ms. Simon of the ability to mitigate the effect of Starbucks' withdrawal, and causing Ms. Simon to waste resources on ineffective promotions tied to Starbucks.  That plainly states a claim for fraud under California law.

*Second*, Starbucks argues that Ms. Simon cannot state a claim for tortious interference with contract because the Complaint does not allege an actual breach of contract.  However, tortious interference does not require an actual breach of contract.  It requires only that the performance of the contract be hindered or disrupted in some way.  Ms. Simon's contract with StarCon required StarCon to promote and distribute her record.  Even assuming that Starbucks' withdrawal did not cause an actual breach of the contract, it clearly disrupted StarCon's performance to the detriment of Ms. Simon.  The Complaint thus states a claim for tortious interference under California law.

*Third*, Starbucks argues that the Complaint fails to state a claim under California's Unfair Competition Law ("UCL").  The UCL is intentionally broad in scope, prohibiting any unfair, unlawful, or fraudulent business act.  It can apply to a single act that has only one victim.  The Complaint alleges acts by Starbucks

that are unfair, unlawful and deceptive, and it alleges that Ms. Simon suffered

injury when she expended resources in reliance on Starbucks' conduct. As such,

she has stated a claim under the UCL and is entitled to restitution thereunder.

## II. BACKGROUND

Ms. Simon is an accomplished singer-songwriter. She has recorded several

gold and platinum records, and has received two Grammy awards, an Oscar, and

a Golden Globe award. She was inducted into the Songwriter Hall of Fame in

1994. (Complaint dated October 9, 2009 ("Compl.") ¶ 2.)

In 2007, Ms. Simon was preparing to record her first album of original

material in several years. This generated interest among many prominent record

labels. (Compl. ¶ 14.) In addition to the interest from prominent record labels,

StarCon LLC d/b/a/ Hear Music ("StarCon") expressed interest in producing Ms.

Simon's album. (Compl. ¶ 14.) StarCon was a newly-formed company jointly

owned by Starbucks and Concord Music Group, Inc. ("Concord Music").

(Starbucks' Memorandum of Points and Authorities in Support of its Motion to

Dismiss, or, in the Alternative, to Strike Plaintiff's Complaint ("Motion to

Dismiss") at 3:2-7.) Ms. Simon was interested in StarCon because it offered

unique access to Starbucks' 13,500 retail outlets and vast digital resources to

promote its artists and distribute their albums. (Compl. ¶ 15.) In a press release

announcing the formation of StarCon, Starbucks stated:

4

> Hear Music will provide a powerful new way for great music to be marketed and distributed. . . .With more than 13,000 locations in 39 countries and more than 44 million customer visits per week, Starbucks offers a unique set of assets.

(Compl. ¶ 9.)  The press release further stated that recordings would be distributed at Starbucks locations in addition to traditional music outlets.  (Compl. ¶ 10.)  Similarly, Mr. Glen Barros, president of Concord Music, stated in a BBC interview that StarCon offered "a pretty powerful new platform, when you can reach 44 million customers per week through Starbucks stores."  (Compl. at ¶ 12.)

Enticed by the prospect of having her record distributed through Starbucks' retail distribution network, Ms. Simon decided not to pursue offers from more well-established record labels and entered into an exclusive record license agreement with StarCon in August 2007 ("the Agreement") to produce, market, and distribute an album of original material (the "Album").  (Compl. ¶ 18.)  The Agreement specifically stated that StarCon was co-owned by Starbucks.[1]  (See Townsend Decl., Exh. A at 18, ¶ 22.)  Moreover, pursuant to the Agreement, StarCon delivered a marketing plan to Ms. Simon that confirmed that her Album

---

[1] The Agreement also states that Ms. Simon waives any claim to be a third party beneficiary of any contractual relationship between Starbucks and Concord or that any representative of StarCon was acting on behalf of Starbucks or Concord. None of the claims in the Complaint are based on third party beneficiary status or a claim that any StarCon employees were acting on behalf of Starbucks or Concord, and that waiver thus has no bearing on the Complaint. (See Townsend Decl., Exh. A at 18, ¶ 22.)

5

would be marketed and distributed at "Starbucks Company operated locations in the US and Canada," including placement and availability in over 7,000 Starbucks stores, marketing on 1,000 Starbucks screens, and digital marketing and sales through a vast array of internet sites.  (Compl. ¶ 19).

Ms. Simon successfully recorded her Album, titled *This Kind of Love*.  It was scheduled to be released on April 29, 2008.  (Compl. ¶ 20.)  Ms. Simon planned a series of performances and other promotional activities designed around the distribution of her Album through Starbucks retail stores.  For example, on April 6, 2008, Ms. Simon taped an electronic press kit in which she stated that her Album would be widely available at Starbucks coffee shops.  (Compl. ¶ 22.)  She also planned a performance and record-signing to take place at Starbucks' flagship store in New York on April 30 to coincide with the Album's release.  (Compl. ¶ 28.)

On April 24, five days prior to the release of Ms. Simon's Album, Starbucks abruptly announced -- without any prior notice to Ms. Simon -- that it was withdrawing from StarCon.  (Compl. ¶ 23.)  It immediately fired StarCon's key employees, including its President, Ken Lombard, and its Vice President of Content Development, Alan Mintz.  (Compl. ¶ 25.)  As a result, StarCon was unable to effectively distribute Ms. Simon's Album as contemplated by the parties and as promised in the marketing plans.  For example, when Ms. Simon

6

performed at Starbucks' flagship store in New York the day after her Album was released, the Album was not even available for sale at the store.  (Compl. ¶ 28.) Indeed, during the first several months after the Album's release, it was not available in a substantial number of Starbucks retails stores, and StarCon was unable to make the Album available on Starbucks' digital networks as it had promised to do.  (Compl. ¶ 34.)  When Starbucks did finally stock the Album in some key markets, it priced the Album at a mid-price sales point, which stigmatized the Album.   (Compl. ¶ 37.)  As a result of Starbucks' actions, sales of the Album were far below projections based on sales of Ms. Simon's prior recordings.  (Compl. ¶ 38.)

### III. APPLICABLE LEGAL STANDARD

It is well settled that in reviewing a motion to dismiss, the court must accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs.  To survive a motion to dismiss, a complaint need not contain detailed factual allegations; rather, it must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Caviness v. Horizon Cmty Learning Ctr, Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, __ US __, 129 S.Ct. 1937, 1949 (2009).  Plausibility "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal

7

evidence" of the alleged misconduct. *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 556, 127 S.Ct. 1955, 1965 (2007).

Claims of fraud and unfair, unlawful and deceptive practices under California's Unfair Competition Law *to the extent* that the claims are based on fraudulent conduct, are subject to Rule 9(b)'s heightened pleading standard. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). The specificity requirement serves two purposes: to furnish the defendant with certain definite charges which can be intelligently met, and to enable the court to determine on the facts pleaded whether there is prima facie showing for the charge of fraud. *See id.* at 1124-25. The heightened pleading requirement is relaxed when a claim for fraud is based on an omission or a nondisclosure. *See Baggett v. Hewlett-Packard Co.*, 582 F.Supp.2d 1261, 1267 (C.D. Cal. 2007) ("[A] fraud by omission or fraud by concealment claim can succeed without the same level of specificity required by a normal fraud claim."). "A plaintiff in a fraudulent concealment suit will 'not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.'" *Id.* at 1267 (C.D. Cal. 2007) (citing *Falk v. General Motors Corp.*, 496 F.Supp.2d 1088, 1098-99 (N.D. Cal. 2007)); *see also Washington v. Baenziger*, 673 F.Supp. 1478, 1482 (N.D. Cal. 1987) ("Where the fraud consists of omissions on the part of the defendants, the plaintiff may find alternative ways to plead the particular

8

circumstances of the fraud.")

## IV. ARGUMENT

### A. The Complaint States a Claim for Deceit.

As alleged in the Complaint, Starbucks knew it would withdraw from StarCon, knew that Ms. Simon was preparing to release her Album in reliance on Starbucks distribution, and yet failed to inform Ms. Simon of its plans, depriving Ms. Simon of the opportunity to develop an alternative distribution strategy in advance of the Album's release, and causing her to waste resources on ineffective promotional activities.

Starbucks argues that Ms. Simon nonetheless cannot state a claim for deceit because (1) Starbucks was not in privity of contract with Ms. Simon and therefore had no duty to disclose its intent to terminate its involvement in StarCon and (2) that even if it had a duty to disclose, Ms. Simon was not justified in relying on Starbucks' continued participation in StarCon.  Both arguments are wrong.  First, a contractual relationship is not required for there to be a duty to disclose under California Civil Code sections 1709 and 1710.  *See Lingsch v. Savage*, 213 Cal.App.2d 729, 736, 29 Cal.Rptr. 201 (Cal. Dist. Ct. App. 1963).  Second, the Complaint plainly alleges facts from which it can be inferred that, in light of the Agreement itself, the marketing plan issued by StarCon pursuant to the Agreement, and Starbucks' conduct, it was reasonable for Ms. Simon to prepare

9

for the release of her Album on the assumption that Starbucks would continue to be a partner in her record label.

### 1. Starbucks Had a Duty to Disclose its Withdrawal from StarCon to Ms. Simon
#### a. Starbucks Had the Necessary Relationship with Plaintiff to Give Rise to an Affirmative Duty to Disclose

Starbucks argues that because it was not a party to the Agreement between Ms. Simon and StarCon, it did not have a duty to disclose its intent to terminate its interest in StarCon. (*See* Motion to Dismiss at 8:25-9:4).   However, California law is clear that "an action for deceit does not require privity of contract." *Nathanson v. Murphy*, 132 Cal.App. 2d 363, 368 (Cal. Dist. Ct. App. 1955); *see also Lingsch*, 213 Cal.App. 2d at 736.  In *Lingsch*, the court held that a real estate agent who was not in privity of contract with the buyer could be held liable for non-disclosures to the buyer. *Id.* The court noted that while there was no fiduciary or confidential relationship between the real estate agent and the buyer, the real estate agent was a party to the business transaction because he had a personal interest in the transaction and derived a profit from the transaction. *Id.* Similar to the real estate agent in *Lingsch*, Starbucks had a personal interest in the Agreement, and as a partner in StarCon, was in a position to derive a profit from the sale of Ms. Simon's Album. *See also, Wells v. John Hancock Mut. Life Ins. Co.*, 85 Cal.App.3d 66, 71, 149 Cal. Rptr. 171 (Cal. Ct. App. 1978) (defendant, a life insurance company, was under a duty to disclose that a policy assigned to

10

plaintiff by a third party had lapsed since it had an interest in tracking the assignment of policies)

None of the cases cited by Starbucks support the proposition that a contractual relationship must exist to give rise to a duty to disclose.  In *Kovich v. Paseo Del Mar Homeowners' Ass'n.*, (Motion to Dismiss at 10:2,), the court dismissed appellant's fraud claim because the defendant had no special relationship to the plaintiff whatsoever, he had not acted as a seller, a party to the contract or had any other special relationship with appellant.  41 Cal.App.4th 863, 866, 48 Cal.Rptr.2d (Cal. Ct. App. 1996).  In so holding, the court in *Kovich* expressly recognized at least two circumstances other than a contractual relationship which may trigger a duty to disclose.  *Id.*  In *Feldburg v. Don Wilson Builders* (Motion to Dismiss at 9:24,) the court held that a prior owner did not have a duty to disclose to a subsequent buyer when he had already fulfilled his duty of disclosure by recording a disclaimer of liability with his quitclaim deed. *Id.*  The court does not address whether a contractual relationship is required to trigger a duty to disclose.  *Id.*  The third case cited by Starbucks, *Cohen v. Citizens Nat'l Trust & Savs. Bank*, 143 Cal.App.2d 480 (Cal. Dist. Ct. App. 1956) (Motion to Dismiss at 10:8,) has since been rejected by *Shapiro v. Sutherland*, 76 Cal.Rptr.2d 101, 110, 64 Cal.App.4th 1534 (Cal. Ct. App. 1999).  Starbucks has thus cited no authority for the proposition that it had no affirmative duty to

11

disclose material facts to Ms. Simon because it is not a party to her Agreement with StarCon.

### b.  Ms. Simon Has Pleaded Two Independent Bases For a Duty to Disclose.

A cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed; (2) the facts are known or accessible only to the defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; or (3) the defendant actively conceals discovery from the plaintiff.  *See Telenda v. NM Homes One, Inc.*, No. B18568, 2007 WL 586804, *12 (Cal. Ct. App. Feb. 27, 2007) (citing *Warner Constr. Corp. v. City of Los Angeles,* 2 Cal.3d 285, 294 (Cal. 1970).).

The Complaint alleges two independent bases to establish Starbucks' duty to disclose.  *First*, it alleges that Starbucks' decision to withdraw from StarCon was known only to Starbucks and that Starbucks knew this fact was not known or reasonably discoverable by Ms. Simon.  (Compl. ¶¶ 23-24.)  Starbucks argues that the Complaint nevertheless fails because, Starbucks asserts, it is "implausible" that "*no one* at [StarCon] was aware of Starbucks alleged 'intent to withdraw.'" (*See* Motion to Dismiss at 11:6-20 (emphasis in original).).  Starbucks does not say why such an allegation is implausible, much less point to anything suggesting that the allegation is untrue.  It simply cannot be said that it

12

is not at least *plausible* that Starbucks would not disclose its plans to exit from

StarCon to its joint venture partner.  *Second*, the Complaint alleges that Starbucks

actively concealed its intentions from Ms. Simon.  Specifically, it alleges that

Starbucks concealed the information about its planned withdrawal from all of its

employees who were in day-to-day contact with Ms. Simon and her

representatives in order to ensure that she did not learn of Starbucks' plans.

(Compl. ¶ 24.)  Accordingly, the Complaint adequately alleges two independent

bases for Starbucks' duty to disclose the fact of its planned withdrawal to Ms.

Simon.  *See Telenda*, 2007 WL 586804 at *12.

### c. Ms. Simon Has Adequately Alleged that She Justifiably Relied on Starbucks' Omission of Material Information

To show actual reliance on a defendant's omission or nondisclosure, the

plaintiff need only prove that, had the omitted information been disclosed, the

plaintiff would have behaved differently.  *See OCM Principal Opportunities*

*Fund v. CIBC World Mkts. Corp.*, 157 Cal.App.4th 835, 864, 68 Cal.Rptr.3d 828

(Cal. Dist. Ct. App. 2007).  Here, if Starbucks had informed Ms. Simon that it

intended to withdraw from StarCon, she would not have designed her

promotional strategy around the distribution of her Album through Starbucks'

retail assets, would not have performed at Starbucks' flagship store in New York

City and would not have stated in her promotional materials that her Album

would be widely available at Starbucks' coffee shops.  (Compl. ¶¶ 22, 28.)

13

Instead, as the Complaint alleges, she would have put in place an alternative plan for the marketing and promotion for the release of her Album.  (Compl. ¶ 43.)

Starbucks argues that Ms. Simon could not have put in place alternative plans to promote her Album even if she had wanted to because, Starbucks argues, she had granted StarCon "overriding authority"  with respect to the promotion of her Album.  (Motion to Dismiss at 13:16-18.)  Tellingly, Starbucks cites no support for this assertion.  In fact, rather than giving StarCon "overriding authority," the Agreement specifically provides that any promotional activities undertaken by Ms. Simon were to be mutually agreed by Ms. Simon and StarCon. (Townsend Decl. Exh. A ¶ 12.)  Starbucks suggests no reason why StarCon would not have approved of a shift in focus away from Starbucks stores, and in fact there is every reason to believe StarCon would have consented, because more effective promotion would have been in StarCon's interest just as much as Ms. Simon's.

Starbucks also argues that the fact that Ms. Simon continued to perform a rigorous schedule of personal appearances and performances pursuant to the Agreement after Starbucks withdrew from StarCon somehow contradicts her allegations that she would have implemented alternate plans if Starbucks' withdrawal was known to her.  (Motion to Dismiss at 13:20-14:11.)  That argument is meritless.  By the time Starbucks disclosed its withdrawal, it was too

14

late for Ms. Simon to implement any changes to her promotional schedule.

(Compl. ¶ 27.)  That is precisely why Ms. Simon was harmed by Starbucks'

concealment.

Finally, Starbucks argues that it was not reasonable for Ms. Simon to rely

on Starbucks' ongoing participation in StarCon and its involvement in the

marketing and distribution of her Album.  (Motion to Dismiss at 14:12-14.)

"Except in the rare case where the undisputed facts leave no room for a

reasonable difference of opinion, the question of whether a plaintiff's reliance is

reasonable is a question of fact.  *See OCM Principal Opportunities Fund*, 157

Cal.App.4th at 864*; Charpentier v. Los Angeles Rams Football Co., Inc.*, 75

Cal.App.4th 301, 314, 89 Cal.Rptr.2d 115 (Cal. Dist. Ct. App. 1999) (stating that a

claim for fraud should not be dismissed for unjustifiable reliance unless the fact

misrepresented is so obviously unimportant that the jury could not reasonably

find that a reasonable man would have been influenced by it).

Here, the question is not, as Starbucks argues, whether Ms. Simon was

"contractually guaranteed" that her album would be distributed through

Starbucks' retail network (Motion to Dismiss at 14:21-23), but whether it was

reasonable for her to believe that the Album would be so distributed, in light of

all the facts and circumstances, including Starbucks' silence.  In light of the facts

that (i) the Agreement specifically stated that Starbucks was a co-owner of

15

StarCon, (ii) nothing Starbucks or StarCon did or said suggested the arrangement was temporary, and (iii) both Starbucks and StarCon knew that Ms. Simon was counting on her record being distributed through Starbucks' retail network, it was certainly reasonable for Ms. Simon to believe that Starbucks would continue its involvement in StarCon, even if it had no contractual obligation to do so.  Given the additional fact that until five days before the Album's release, Starbucks said nothing to suggest that it would withdraw, there was no reason for Ms. Simon to believe that the status quo would not continue, and it was therefore entirely reasonable for her to prepare for the launch of her Album accordingly.  At a minimum, it cannot be said that her reliance was so unreasonable that no reasonable juror could disagree, such as would warrant dismissal.  *See OCM Principal Opportunities Fund*, 157 Cal.App.4th at 864*; Charpentier*, 75 Cal.App.4th at 314.

## B. The Complaint States a Claim for Tortious Interference with Contract

The Complaint alleges that (1) there was a valid contract between StarCon and Ms. Simon (Compl. ¶ 18), (2) Starbucks was aware of the Agreement (Compl. ¶¶ 8-19), (3) Starbucks withdrew from the joint venture five days before Ms. Simon's Album was to be released and fired StarCon's key employees knowing that this was substantially certain to interfere with StarCon's ability to distribute Ms. Simon's Album as contemplated by the Agreement (Compl. ¶¶ 23-

16

27)[2], (4) StarCon was unable to effectively perform its obligations (Compl. ¶ ¶

26-35), and (5) Ms. Simon was damaged thereby (Compl. ¶¶  34-38).

Accordingly, Ms. Simon has effectively stated a claim for tortious interference

with contract.  *See Reeves v. Hanlon*, 33 Cal.4th 1140, 1148 (Cal. 2004).

Starbucks argues that the Complaint fails to state a claim because it does

not allege an actual breach of the Agreement as a result of Starbucks' conduct.

(Motion to Dismiss at 16:7-14.)  The law is clear, however, that tortious

interference does not require an actual breach of the contract.  *Shamblin v. Berge*,

166 Cal. App.3d 118, 122-23, 212 Cal.Rptr. 313 (Cal. Dist. Ct. App. 1985), *see*

*also Sebastian Int'l, Inc. v. Russolillo*, 162 F.Supp.2d 1198, 1204 (C.D. Cal.

2001) ("California courts have made clear that 'interference' does not necessarily

require evidence of any 'breach'").  Ms. Simon need only plead that Starbucks

disrupted her contractual relationship with StarCon.[3]  *See LiMandri v. Judkins*,

52 Cal.App.4th 326, 344, 60 Cal.Rptr. 25, 539 (Cal. Dist. Ct. App. 1997) (actual

disruption when defendant's conduct disrupted a [third party's] performance of its

contract with plaintiff)

---

[2] To state a claim for tortious interference with contract, the plaintiff need not show that the defendant's primary or only purpose was to disrupt the contract, only that the defendant knew that its actions were certain or substantially certain to disrupt the contract.  *See Reeves v. Hanlon*, 33 Cal.4th 1140, 1148 (Cal. 2004).

[3] Starbucks does not dispute that Ms. Simon has properly alleged the remaining elements of a claim for tortious interference of contractual relations.

17

In *LiMandri v. Judkins*, the defendant pursued litigation to enforce his alleged superior lien rights to a monetary settlement with the knowledge that plaintiff, the attorney on the matter, had prior liens on the money.  *Id.*  The court found that even though there was no breach, because the plaintiff was ultimately paid all of his fees and expenses, the defendant was nonetheless liable for tortious interference with contract because he disrupted the performance of the plaintiff's contract with his clients by delaying such payment through his ultimately unsuccessful litigation.  *Id.*  Similarly, here, Starbucks' withdrawal from StarCon plainly disrupted StarCon's performance of its Agreement with Ms. Simon, whether or not such disruption amounted to a breach.  As discussed above, StarCon had an Agreement to distribute Ms. Simon's Album, which, until five days before the Album's release, was to be accomplished primarily using Starbucks' retail network.  Even assuming StarCon's failure to distribute the Album as contemplated by the Agreement and the marketing plan was not a breach of that Agreement, the Complaint plainly alleges that Starbucks conduct hindered and disrupted StarCon's performance to the detriment of Ms. Simon.  Under California law, that states a claim for tortious interference with contractual relations.  *See LiMandri*, 52 Cal.App.4th at 344 (Cal. Dist. Ct. App. 1997).

## C. Ms. Simon Has Stated that Starbucks Engaged in Unlawful, Unfair and Deceptive Business Acts in Violation of California's Unfair Competition Law

18

The UCL protects individuals, such as Ms. Simon, from any business act or practice that is unlawful, unfair or fraudulent. *See* Cal. Bus. and Prof. §§ 17200 – 17210. Its "sweeping language" permits a court to enjoin ongoing wrongful business conduct in whatever context such activity might occur. *Alch v. Superior Court of Los Angeles*, 122 Cal.App.4th 339, 400-01, 19 Cal.Rptr.3d 29 (Cal. Dist. Ct. App. 2004). No pattern of unlawful conduct is required; even a single act may create liability. *See United Farm Workers of Am., AFL-CIO, et al v. Dutra Farms, et al.*, 83 Cal.App.4th 1146, 1163, 100 Cal.Rptr.2d 251 (Cal. Dist. Ct. App. 2000.)

**1. Ms. Simon Has Standing to Bring a Claim under the UCL**

Starbucks argues that Ms. Simon lacks standing to bring a claim under the UCL because the Complaint does not allege an "injury in fact" as a result of Starbucks' conduct. A plaintiff suffers an injury in fact for purposes of standing under the UCL when she expends money due to the defendant's unfair acts. *See Hall v. Time*, 158 Cal.App.4th 847, 855, 70 Cal.Rptr.3d 466 (Cal. Dist. Ct. App. 2008*); see also Witriol v. LexisNexis Group*, No. C05-02392, 2006 WL 4725713, *6 (N.D. Cal. Feb. 10, 2006) (plaintiff suffered actual injury when he incurred costs to monitor and repair damage to his credit caused by defendants' unauthorized release of private information); *Cal. Housing v. Los Feliz Towers Homeowners*, 426 F.Supp.2d 1061, 1069 (C.D. Cal. 2005) (non-profit suffered

injury when it lost financial resources and diverted staff time to investigate case against defendants).  Here, the Complaint alleges that Ms. Simon spent time and money to promote her Album through Starbucks' retail venues, including performances at Starbucks' stores, that she would not have spent but for Starbucks' wrongful conduct.  (*See* Compl. at ¶¶ 21-22, 28.)  Accordingly, she has alleged an injury in fact and has standing to assert a UCL claim.

### 2.  Starbucks' Conduct was Unlawful

An unlawful business practice under the UCL is anything that can properly be called a business practice and that at the same time is forbidden by law.  *See Saldate v. Wilshire Credit Corp.*, No. CV F 09-2089, 2010 WL 624445, *11 (E.D. Cal. Feb. 18, 2010).  The UCL borrows violations of other laws and treats them as unlawful practices that are independently actionable. *Bernardo v. Planned Parenthood Fed. of Am.*, 115 Cal.App.4th 322, 352, 9 Cal.Rptr.3d 197 (Cal. Dist. Ct. App. 2004).  To state a claim for an unlawful business practice, plaintiff only need to assert the violation of any other law.  *Saldate*, 2010 WL 624445 at *12 (citing *Cel-Tech Commc'ns, Inc.v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (Cal. 1999).).  Here, Ms. Simon alleged that Starbucks has violated California Civil Code §§ 1709 and 1710.  (*See* Compl. ¶¶ 39-45.). Accordingly, Ms. Simon has alleged an unlawful business act under the UCL.

20

**3.  Starbucks' Conduct was Unfair**

Starbucks argues that Ms. Simon has not alleged any unfair business acts because Ms. Simon's allegations do not meet the test for unfairness outlined in *Cel-Tech Commc'ns, Inc.*, 20 Cal.4th 163.   However, as recognized by the court in *Cel-Tech* and subsequent California courts, *Cel-Tech* only applies when plaintiff's allegations arise from a direct competitor's anti-competitive act.  *Cel-Tech Commc'ns*, 20 Cal.4th at 185-87; *Progressive West Ins. Co. v. Yolo County Sup. Ct.*, 135 Cal.App.4th 263, 268, 37 Cal.Rptr.3d 434  (Cal. Dist. Ct. App. 2005) ("We conclude that the [pre-Cal Tech] cases should continue to apply in consumer cases"); *Alch*, 122 Cal.App.4th at 402 (same).  Starbucks is not a direct competitor of Ms. Simon's, therefore *Cel-Tech* does not apply.

Because *Cel-Tech* does not apply, the proper test to determine when a business practice is unfair is to balance the harm against any utility behind the practice.  *See Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 162 Cal.Rptr. 543 (Cal. Dist. Ct. App. 1980); *Katz v. Cal-Western Reconveyance Corp.*, No. 5:09-CV-04866 JF, 2010 WL 424453 (N.D. Cal. 2010).  A business practice is also unfair when it offends an established public policy or is immoral, unethical, oppressive or unscrupulous.  *Smith v. State Farm Mut. Auto Ins. Co.*, 93 Cal.App.4th 700, 718-19, 113 Cal.Rptr.2d 399 (Cal. Dist. Ct. App. 2001); *Falk v. Gen. Motors Corp.*, 496 F.Supp.2d at 1098.  Whether a business practice is

21

unfair is generally a question of fact that requires consideration and weighing of evidence from both sides.  Accordingly, courts grant a motion to dismiss under the UCL only in rare situations.  *See Claver v. Coldwell Banker Residential Brokerage Co.*, No. 08CV817-L, 2009 WL 801869, *3 (S.D. Cal. Mar. 25, 2009) (citing *Williams v. Gerber Prod. Co.,* 552 F.3d 934, 938-40 (9th Cir. 2008).).

Here, the Complaint plainly alleges unscrupulous conduct by Starbucks where the harm to Ms. Simon substantially outweighs any business justification. As discussed above, Ms. Simon was induced to sign a record deal with StarCon based on the understanding that Starbucks was a partner in StarCon and that her Album would be distributed through Starbucks' retail network.  Several months later, Starbucks apparently concluded that its own business interests were no longer served by its participation in StarCon.  Although it knew that Ms. Simon was relying on its participation to distribute her Album, it concealed its withdrawal from Ms. Simon until five days before her Album was released, allowing her to continue to execute a promotional strategy that was dependent on Starbucks' participation.  Starbucks thus not only destroyed the rationale for Ms. Simon's Agreement with StarCon and denied her the opportunity to develop an alternative marketing plan in time for the release of her Album, but it caused her to spend time and resources on promotional efforts centered on Starbucks retail stores which, due to Starbucks' abrupt withdrawal, were useless.  These

22

allegations are plainly sufficient to state a claim, and it is for a jury to decide

whether any possible benefit outweighs their obvious harm to Ms. Simon.  *See*

*Claver*, 2009 WL 801869 at *3-4 (denying a motion to dismiss a UCL claim since

the claim required a weighing of harm to plaintiff against defendant's

justifications, reasons and motives, which cannot be done on a motion to dismiss).

### 4.  Plaintiff Has Requested Proper Relief Under the UCL

The UCL "restore[s] to any person in interest any money or property, real

or personal, which may have been acquired by means of such unfair

competition."   Cal. Bus. & Prof § 17203.  Ms. Simon seeks restoration of money

and property lost as a result of Defendant's unfair or unlawful business practices.

(Compl. ¶¶ 57-58.)   As discussed above, Ms. Simon alleges that she spent time

and money promoting her Album through Starbucks' venues that she would not

have spent if she had known of Starbucks' intent to withdraw from the operations

of StarCon.  For example, on April 6, 2008, Ms. Simon taped an electronic press

kit in which she stated that her Album would be widely available at Starbucks'

coffee shops.  (Compl. ¶ 22.)  On April 30, 2008, she held an event at Starbucks'

flagship store in New York City and found out that her albums were not even

stocked at the store.  (Compl. ¶ 28.)  She would not have expended her time and

resources on those activities if she had known the truth: that Starbucks intended to

end its participation in StarCon.  She is entitled to restitution for those expenses

1   under the UCL.  *See In re Baycol Cases I and II*, No. B204943, 2009 WL

2   3353536, *7 (Cal. Dist. Ct. App. Oct. 20. 2009) (increased costs incurred by

3   plaintiff due to defendant's unfair, unlawful and deceptive acts are restitution

4   

5   recoverable under the UCL).

6   **D. Starbucks' Motion to Strike Portions of Plaintiff's Complaint Should be**

7   **Denied**

8   In alternative to its Motion to Dismiss, Starbucks seeks to strike portions of

9   

10  the Complaint pursuant to Federal Rule of Civil Procedure 12(f).  Starbucks states

11  that Ms. Simon's claims of violations of the UCL under the unlawful, unfair, and

12  fraudulent prong should be stricken from the Complaint because, Starbucks

13  argues, Plaintiff failed to state such violations.[4]  Starbucks additionally moves to

14  

15  strike Plaintiff's prayer for restitution, restoration and attorney's fees because

16  such relief is allegedly not available under the UCL.

17  

18  Rule 12(f) is not the proper vehicle to challenge the sufficiency of factual

19  allegations in a Complaint.  *See Consumer Solutions REO LLC v. Hillery*, 658

20  F.Supp.2d 1002, 1020-21 (N.D. Cal. 2009).  Rule 12(f) provides that a court

21  

22  "may order stricken from any pleading . . . any redundant, immaterial,

23  impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Immaterial matter is

24  that which "has no essential or important relationship to the claim for relief or the

25  

26  

27  [4] As discussed above, Ms. Simon has not alleged a claim under the fraudulent

28  prong of the UCL.

24

defenses being pleaded." *Cairns v. Franklin Mint Company*, 24 F.Supp.2d 1013, 1037 (C.D. Cal. 1998).  Impertinent matter "consists of statements that do not pertain, or are not necessary to the issues in question."  *Colaprio v. Sun Microsystems Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991).  Starbucks fails to explain why Ms. Simon's claims under the UCL are redundant, immaterial, impertinent or scandalous.  Nevertheless, as discussed above in Section C.1-C.3, Ms. Simon has alleged factual allegations to support her claims under the unlawful and unfair prongs of the UCL.  Similarly, as discussed in detail above (*see* Section C.4), Ms. Simon has alleged factual allegations to support her claims for restitution and restoration under the UCL.  Furthermore, if a plaintiff prevails in an unfair competition law claim, it may seek attorney's fees as a private attorney general pursuant to California Code of Civil Procedure Section 1021.5.  *See Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4[th] 1158, 1179 (2002).

## V. CONCLUSION

For all the foregoing reasons, Ms. Simon requests that Starbucks' Motion to Dismiss, or in the alternative to Strike Portions of Plaintiff's Complaint be denied.

Date:  March 15, 2010                    BOIES, SCHILLER & FLEXNER LLP

By: _____/s/_____
        Philip M. Bowman

Attorneys for Plaintiff Carly E. Simon

25